UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter<br><br>of<br><br>The Complaint of LAVA OCEAN TOURS INC., a Hawai`i Corporation, as owner of M/V <u>HOT SPOT</u>, O.N. 1277287, for exoneration from or limitation of liability. | CIV. NO. 19-00023 LEK-RLP |

**ORDER GRANTING IN PART AND DENYING IN PART LIMITATION PLAINTIFF'S MOTION TO ENFORCE ORDER DIRECTING RESTRAINING ORDER FILED FEBRUARY 14, 2019 [DKT. NO. 16]**

On March 25, 2019, Limitation Plaintiff Lava Ocean Tours Inc. ("Limitation Plaintiff") filed its Motion to Enforce Order Directing Restraining Order Filed February 14, 2019 [Dkt. No. 16] ("Motion"). [Dkt. no. 31.] On April 5, 2019, Claimants/Third-Party Plaintiffs Robert E. Tilton, individually and as next friend of O.T., a minor, and A.T., a minor; Teresa J. Tilton; and Jessica Tilton ("Tilton Claimants"), filed their memorandum in opposition to the Motion, and on April 10, 2019, the Limitation Plaintiff filed its reply. [Dkt. nos. 37, 40.] This matter came on for hearing on April 15, 2019. The Limitation Plaintiff's Motion is hereby granted in part and denied in part for the reasons set forth below.

**BACKGROUND**

On January 16, 2019, the Limitation Plaintiff filed its Complaint for Exoneration from or Limitation of Liability ("Limitation Complaint"), pursuant to 46 U.S.C. § 30501, *et seq.* ("Limitation Act" or "the Act"), and Rule F of the Federal Rules of Civil Procedure Supplemental Rules for Admiralty of Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). [Dkt. no. 1 at ¶ 22.] The Limitation Complaint seeks exoneration from or limitation of liability for claims arising from the July 16, 2018 lava tour group excursion to the Kilauea Volcano East Rift Zone. [Id. at ¶¶ 1, 6.] The Limitation Plaintiff is the owner of the M/V HOT SPOT, O.N. 1277287 ("the Vessel"), which is a thirty-nine foot vessel used for passenger excursions. [Id. at ¶¶ 1, 4.] Third-Party Defendant Shane Turpin ("Turpin") is the sole corporate officer of, and sole shareholder in, the Limitation Plaintiff. [Motion, Decl. of Shane Turpin ("Turpin Decl.") at ¶ 1.] On July 16, 2018, the Vessel carried forty-nine passengers and three crewmembers to view the ocean entry of the Kilauea Volcano lava flow. [Limitation Complaint at ¶ 6.] The Limitation Plaintiff alleges that, during the voyage, the Vessel was operated in compliance with the United States Coast Guard Marine Safety Information Bulletin 18-008, "Kilauea Volcano Lower East Rift Zone Ongoing

2

Lava Safety Zones Access Requirements Update," dated July 11, 2018; however, an unforeseeable offshore submarine volcanic event caused lava rock to strike the Vessel in the passenger seating area ("the Incident"). [Id. at ¶¶ 7-8.]

I.  **Limitation Action**

The Limitation Plaintiff alleges it should be exonerated from all liability arising from the Incident, or in the alternative, have its liability limited to "the value of its interest in the vessel at the end of the voyage on July 16, 2018."[1]  [Id. at ¶ 23.]  In the Limitation Complaint, the Limitation Plaintiff sought a Court order, *inter alia*: directing all parties with claims against the Limitation Plaintiff arising from the Incident to submit their claims in the instant action, and to file their respective answers, if any, to the allegations in the Limitation Complaint; [id. at pg. 7, ¶ 2;] and restraining the further prosecution of any and all suits already commenced against the Limitation Plaintiff in any court against the Limitation Plaintiff's "agents, servants, and/or employees and/or [the Vessel]" with regard to the Incident, [id. at pgs. 8-9, ¶ 4].

---

[1] The Limitation Plaintiff alleges that the value of its interest in the Vessel at the end of the July 16, 2018 voyage did not exceed $ 300,000.  [Limitation Complaint at ¶ 14.]

On February 4, 2019, the Limitation Plaintiff posted $300,000 in security pursuant to Supplemental Rule F(1), based on the value of the Vessel after the Incident. [Dkt. no. 7-1.] On February 14, 2019, the Court issued the Order Directing Issuance of Notice, Publication Thereof and Restraining Order ("Restraining Order"), [dkt. no. 16,] which ordered: notice to be issued for all persons asserting claims against the Limitation Plaintiffs to file their claims in the instant limitation action; that said notice be published; and to cease the continued prosecution of any pending actions against the Limitation Plaintiff. [Id. at 3-4.] Specifically, the Restraining Order required that:

> the continued prosecution of any and all suits, actions, and proceedings which may have already begun against Limitation Plaintiff LAVA OCEAN TOURS INC. in any court whatsoever to recover damages arising out of, or occasioned by, consequent upon or otherwise arising in connection with the aforesaid accident and the institution and prosecution of any suits, actions or legal proceedings of any nature or description whatsoever in any Court whatsoever, except in this proceeding for exoneration from or limitation of liability, against Limitation Plaintiff LAVA OCEAN TOURS INC. with respect to any claim or claims arising out of the aforesaid accident or otherwise subject to limitation in this proceeding shall cease, be and hereby are, stayed and restrained; . . . .

Id. at 4 (emphases in original).

## II. State Court Action

On January 17, 2019, the Tilton Claimants filed their complaint in the Circuit Court of the Third Circuit, State of Hawai`i, under Civil No. 19-1-0023 ("State Court Action"), and filed their first amended complaint ("State Court Complaint") against both the Limitation Plaintiff and Turpin on January 22, 2019.  See Mem. in Supp. of Motion at 4.[2]  The State Court Action arises out of the same Incident as the instant limitation action.  See id. at 4-5.  On January 28, 2019, the Tilton Claimants served a request for production of documents on Turpin.  [Id. at 4.]  On February 19, 2019, counsel for the Limitation Plaintiff sent a letter to the Tilton Claimants' counsel to remind him that the Restraining Order stayed the proceedings in the State Court Action against both the Limitation Plaintiff and Turpin.  [Motion, Decl. of Normand R. Lezy ("Lezy Decl.") at ¶ 5, Exh. 1.]  The Tilton Claimants' counsel disagreed as to the scope of the Restraining Order and whether it applied to Turpin in the State Court Action.  [Lezy Decl., Exh. 2 (email chain dated 2/19/19 between Mr. Lezy and

---

[2] The Limitation Plaintiff notes the original complaint in the State Court Action did not name the Limitation Plaintiff. See Mem. in Supp. of Motion at 4; and see Mem. in Opp., Decl. of Patrick F. McTernan ("McTernan Decl."), at ¶ 8 ("Claimants amended their state court complaint to add [the Limitation Plaintiff] as a defendant.").

5

Patrick McTernan, Esq.).] After some additional correspondence, the Limitation Plaintiff filed its Motion.

**III. Motion**

The instant Motion seeks an order from this Court to enforce the Restraining Order as to any claims filed against Turpin in any other proceedings related to the Vessel and the Incident, including but not limited to the State Court Action. The Limitation Plaintiff also seeks civil contempt sanctions for the Tilton Claimants' violation of the Restraining Order. The Tilton Claimants argue Turpin was neither identified in the Restraining Order nor is he the owner of the Vessel for the purposes of the Limitation Act, and sanctions are not appropriate.

**DISCUSSION**

**I. Limitation of Liability in General**

"The Limitation of Liability Act limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'" In re BOWFIN M/V, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam) (quoting 46 U.S.C. § 30505). The purpose of the Limitation Act is to "encourage ship-building and to induce capitalists to invest money in this branch of industry." Lewis v. Lewis & Clark Marine, Inc., 531

U.S. 438, 446 (2001) (citations and internal quotation marks omitted). The form of the limitation proceeding directs "all claims against an owner to be aggregated and decided at one time under a single set of substantive and procedural rules, thereby avoiding inconsistent results and repetitive litigation." In re Complaint of Paradise Holdings, Inc., 795 F.2d 756, 761 (9th Cir. 1986) (citing Maryland Casualty Co. v. Cushing, 347 U.S. 409, 414-16, 74 S. Ct. 608, 610-12, 98 L. Ed. 806 (1954) (plurality opinion)). "This objective is especially important where there are multiple claims, which aggregate to more than the limitation fund; the *concursus* before the admiralty court is designed in part to marshall available assets and to set priorities among the various claims." Id. (citing S & E Shipping Corp. v. Chesapeake & Ohio Railway, Co., 678 F.2d 636, 642 (6th Cir. 1982)).

>The Limitation Act provides, in pertinent part:
>
>(a) In general. - The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim.
>
>(b) Creation of fund. - When the action is brought, the owner (at the owner's option) shall -
>
>>(1) deposit with the court, for the benefit of claimants –

> > (A) an amount equal to the value of
> > the owner's interest in the vessel and
> > pending freight, or approved security;
> > and
> >
> > (B) an amount, or approved security,
> > that the court may fix from time to
> > time as necessary to carry out this
> > chapter; . . .
>
> . . . .
>
> (c) Cessation of other actions. – When an action
> has been brought under this section and the owner
> has complied with subsection (b), all claims and
> proceedings against the owner related to the
> matter in question shall cease.

46 U.S.C. § 30511.

"The procedure for a limitation action is now found in Supplemental Admiralty and Maritime Claims Rule F," which "sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability." Lewis, 531 U.S. at 448. Rule F of the Supplemental Rules provides, in pertinent part:

> (1) Time for Filing Complaint; Security. Not
> later than six months after receipt of a claim in
> writing, any vessel owner may file a complaint in
> the appropriate district court, . . . for
> limitation of liability pursuant to statute. The
> owner (a) shall deposit with the court, for the
> benefit of claimants, a sum equal to the amount
> or value of the owner's interest in the vessel
> and pending freight, or approved security
> therefor, and in addition such sums, or approved
> security therefor, as the court may from time to
> time fix as necessary to carry out the provisions
> of the statutes as amended; . . . . The
> plaintiff shall also give security for costs and,
> if the plaintiff elects to give security, for
> interest at the rate of 6 percent per annum from
> the date of the security.

8

> . . . .
>
> (3) Claims Against Owner; Injunction.  Upon
> compliance by the owner with the requirements of
> subdivision (1) of this rule all claims and
> proceedings against the owner or the owner's
> property with respect to the matter in question
> shall cease.  On application of the plaintiff the
> court shall enjoin the further prosecution of any
> action or proceeding against the plaintiff or the
> plaintiff's property with respect to any claim
> subject to limitation in the action.

### A. <u>Owner under the Limitation Act</u>

The Limitation Plaintiff and the Tilton Claimants dispute whether Turpin may be considered an "owner" under the Act, since the Limitation Plaintiff is the owner of record for the Vessel.  This Court previously explained that the definition of an "owner" under the Act is flexible:

> Courts have held that the term "owner" is taken
> in a broad and popular sense, and that title
> ownership is not dispositive of the issue of who
> is an "owner" for purposes of the statute.  In
> <u>Admiral Towing Co. v. Woolen</u>, 290 F.2d 641, 645
> (9th Cir. 1961), an "owner" was described as one
> whose
>
>> relationship to the vessel is such as might
>> reasonably afford grounds upon which a claim
>> of liability for damages might be asserted
>> against him, a claim predicated on his
>> status as the person perhaps ultimately
>> responsible for the vessel's maintenance and
>> operation and a claim against which the
>> Limitation Act is designed to furnish
>> protection.
>
> See also <u>Flink v. Paladini</u>, 279 U.S. 59, 63, 49
> S. Ct. 255, 73 L. Ed. 613 (1929) (stating that
> the term "owner" as used in the Act is an

9

>    "untechnical word" that should be interpreted in
>    a liberal way); Complaint of Nobles, 842 F. Supp.
>    1430, 1437 (N.D. Fla. 1993) ("Title ownership is
>    not dispositive of the issue of who is an 'owner'
>    for purposes of the Act. The word 'owner' in the
>    Limitation Act is accorded a liberal, common
>    sense interpretation in order to effectuate the
>    intent of the act. Factors such as who pays for
>    storage of the vessel and who skippers the
>    vessel, as well who has possession and control of
>    the vessel, must be taken into account in
>    determining who is an owner for purposes of the
>    Act." (citations omitted)); Complaint of Lady
>    Jane, Inc., 818 F. Supp. 1470, 1474 (M.D. Fla.
>    1992) (finding that sole stockholder was "owner"
>    under the Act). Cf. Sailing Shipps, Ltd. v.
>    Alconcel, Civil No. 11-00171 SOM/BMK, 2012 WL
>    2884861, at *4 (D. Hawai`i July 12, 2012) ("When
>    a shareholder's negligence is in issue, the
>    corporation had knowledge of the negligence or
>    was in privity with the shareholder only if the
>    shareholder was a managing officer or a
>    supervisory employee.").

In re Aloha Jetski, LLC, 920 F. Supp. 2d 1143, 1147-48 (D. Hawai`i 2013). In sum, depending on the circumstances of the case and the relationship of the individual to the vessel at issue, an individual who does not hold title to a vessel may nevertheless be considered an "owner" under the Act.

In the instant matter, the Limitation Plaintiff asserts that it – not Turpin – was the owner of the Vessel "within the meaning of 46 U.S.C. §§ 30501, *et seq*." on the date of the Incident. [Limitation Complaint at ¶ 2.] Turpin is, however, the sole corporate officer and sole shareholder of the corporate shipowner. [Turpin Decl. at ¶ 1.] Turpin states that he was responsible for the maintenance and operation of the

10

Vessel on the date of the Incident, and is listed as an insured under the Limitation Plaintiff's insurance policy. [Id. at ¶¶ 2-3.] The Tilton Claimants do not dispute that Turpin "held a position of ultimate authority regarding the conduct of the vessel during the voyage." [Third-Party Complaint at ¶ 17.[3]] The Tilton Claimants allege it was Turpin who brought "his [V]essel in such close proximity to the lava entry points, . . . plac[ing] himself in a position where he would be helpless to protect his passengers from serious physical and emotional harm in the event of a lava explosion." [Id. at ¶ 37.]

Based on the particular facts presented in this case, including Turpin's undisputed control over Vessel on the date of the Incident, and the basis of the Tilton Claimants' claims against Turpin, it is appropriate to consider Turpin an "owner" under the Act. See Admiral Towing, 290 F.2d at 645; cf. Calkins v. Graham, 667 F.2d 1292, 1294-95 (9th Cir. 1982) (noting that the non-owner who asserted he operated and managed the vessel did not have "exclusive possession and control of the vessel" at the time of the accident, therefore he could not be considered an "owner" under the Act). Additionally, because limitation

---

[3] The Limitation Plaintiff asserts the Third-Party Complaint is "essentially identical to the [State Court Complaint] that Claimants filed in the State Court Action," although no copy of the State Court Complaint has been identified as an exhibit to the Motion, or in the record before the Court. Mem. in Supp. of Motion at 5.

11

actions are "equitable proceedings in which courts must consider 'the rights of all claimants in addition to . . . the rights of the insured and insurors,'" see Paradise Holdings, 795 F.2d at 761 (alteration in Paradise Holdings) (citation omitted), the following additional factors are also considered.

First, the value of the known claims against the Limitation Plaintiff and Turpin exceed the value of the limitation fund. The limitation fund is $300,000, while counsel for the Tilton Claimants represents that at least one of the Tilton Claimants has incurred damages of at least $400,000. [McTernan Decl. at ¶ 4]. When there are multiple claims which "aggregate to more than the limitation fund," such as here, "the *concursus* before the admiralty court is designed in part to marshall available assets and to set priorities among the various claims." Paradise Holdings, 795 F.2d at 761 (citation omitted).

Second, the Tilton Claimants have filed a Third-Party Complaint against Turpin in the instant limitation action **in addition to** their State Court Action claims.[4] Thus, the purported prejudice against the Tilton Claimants as a result of

---

[4] The Court makes no finding as to whether the claims in the Third-Party Complaint are identical to the claims against Turpin in the State Court Action. As stated *supra* note 3, the State Court Complaint is not a part of the record before the Court.

staying the State Court Action against Turpin is mitigated by allowing the Tilton Claimants to proceed with their Third-Party Complaint. Staying the State Court Action will also potentially narrow the issues for the State Court Action based on res judicata and/or collateral estoppel.

Third, even if Turpin is considered an "owner" under the Act, the Tilton Claimants' assumption that this will render the corporate veil pierced is misguided. This district court has stated:

> The test for piercing the corporate veil under admiralty law is well established — a court sitting in admiralty "may pierce the corporate veil in order to reach the 'alter egos' of a corporate defendant" where the "controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own." [Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1294 (9th Cir. 1997) (quoting Kilkenny[ v. Arco Marine, Inc.], 800 F.2d [853,] 859 [(9th Cir. 1986)]). The corporate veil may be pierced "where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." Id. (citing Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980)). "To determine whether an individual so dominated and disregarded a corporate entity's corporate form, a court may consider several factors, including: '(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation.'" Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 53 (2d Cir. 2008) (quoting

13

>     William Wrigley Jr. Co. v. Waters, 890 F.2d 594,
>     600 (2d Cir. 1989)).

Cabasug v. Crane Co., Civil No. 12-00313 JMS/BMK, 2014 WL 527705, at *10 (D. Hawai`i Feb. 7, 2014). The Tilton Claimants have not submitted any of the foregoing evidence in support of their contention that veil-piercing is appropriate, therefore their argument is rejected.

Fourth, permitting the Tilton Claimants to proceed against Turpin in the State Court Action ahead of or concurrent with the limitation action would potentially render the injunction as to the Limitation Plaintiff moot where Turpin is likely to have the same documents as the Limitation Plaintiff, see McTernan Decl., Exh. B (Turpin's responses to the Tilton Claimants' first request for production of documents in the State Court Action, dated 3/1/19),] and where Turpin's liability may be decided before the Limitation Plaintiff's, which may have a preclusive effect in the limitation action. See Paradise Holdings, 795 F.2d at 762. Further, because it is undisputed that Turpin is a named insured on the same insurance policy as the Limitation Plaintiff, and there are multiple claimants seeking damages,[5] there is a possibility that defense costs as well an unfavorable decision in the State Court Action may

---

[5] For example, the Tilton Claimants consist of five individuals.

deplete coverage for the Limitation Plaintiff before the instant matter concludes.[6]  See id. ("A major purpose of the Act is to permit the shipowner to retain the benefit of his insurance.").

Finally, because "a district court has discretion to stay the state action or otherwise to shape the limitation proceedings in a manner that promotes the purposes of the Act," id. at 763, and based on the particular circumstances of this case, this Court concludes that Turpin is an owner under the Act.  For these reasons, the Restraining Order shall apply with equal force to any and all claims against Turpin pending outside of the instant limitation action.

## II. Civil Contempt Sanctions

Civil contempt sanctions are considered to be "coercive and avoidable through obedience, and may be imposed in civil proceedings "upon notice and an opportunity to be heard." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).  Civil contempt is reserved for a party who fails to take "all reasonable steps within that party's power" to comply with a "specific and definite court order." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006)

---

[6] The Tilton Claimants assert that, based on the statements by the Limitation Plaintiff's counsel, the insurance policy for both the Limitation Plaintiff and Turpin is a $1,000,000 cannibalizing policy, which means that "defense costs reduce the coverage," and there is excess coverage of $4,000,000.  [Mem. in Opp., Decl. of L. Richard Fried, Jr. at ¶ 3.]

15

(citation and quotation marks omitted).  However, a person should not be held in contempt "if his action appears to be based on a good faith and reasonable interpretation of the court's order."  Id. (citation and quotation marks omitted).

As shown by the instant dispute, the Restraining Order did not provide the clearest guidance as to whether it applied to Turpin.  Turpin is not included in the plain language of the Restraining Order, therefore the Tilton Claimants' attempts to obtain discovery in the State Court Action was not a violation of a "specific and definite court order" from this Court.  Instead, the Tilton Claimants' attempts to engage in discovery "appears to be based on a good faith and reasonable interpretation" that the Restraining Order only applied to the Limitation Plaintiff.  See id.  Accordingly, the Limitation Plaintiff's request for civil contempt sanctions against the Tilton Claimants for their attempts to obtain discovery as to Turpin in the State Court Action is denied.  Going forward, however, the Tilton Claimants and other parties are enjoined from initiating and/or proceeding against Turpin for any claims related to claims at issue in this limitation action, and failure to do so may result in sanctions against the affronting party.

## CONCLUSION

On the basis of the foregoing, the Limitation Plaintiff's Motion to Enforce Order Directing Restraining Order Filed February 14, 2019 [Dkt. No. 16], filed on March 25, 2019, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to the Limitation Plaintiff's request that the Restraining Order apply with equal force to Turpin as an "owner" under the Limitation Act. The Motion is DENIED as to the Limitation Plaintiff's request for civil contempt sanctions against the Claimants.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, May 31, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**IN RE LAVA OCEAN TOURS; CV 19-00023 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART LIMITATION PLAINTIFF'S MOTION TO ENFORCE ORDER DIRECTING RESTRAINING ORDER FILED FEBRUARY 14, 2019 [DKT. NO. 16]**